UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| MORRIS M. MOSBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 2:08-CV-312 |
| | ) | (MATTICE/CARTER) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>REPORT AND RECOMMENDATION</u>

This is an action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") that Plaintiff, Morris Michael Mosberg, was not "disabled" as defined by the Social Security Act ("Act"). 42 U.S.C. § 423(d). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings or in the Alternative for Remand (Doc. 8) and defendant's Motion for Summary Judgment (Doc. 11).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

<u>Administrative Proceedings</u>

Plaintiff applied for a period of disability and Disability Insurance Benefits ("DIB") in April 2006, alleging that he became unable to work on May 15, 2000, due to back and heart problems and gastritis (Tr. 86-91, 98). Plaintiff's insured status for purposes of DIB expired on

1

December 31, 2005 (Tr. 92).[1] Plaintiff's application for DIB was denied throughout the administrative process (Tr. 1-17, 19-31, 36-64).

Plaintiff requested review of the ALJ's decision and the Appeals Council granted Plaintiff's request (Tr. 1-17). The Appeals Council indicated that it did not agree with the ALJ's finding that Plaintiff had a "severe" mental impairment (Tr. 6). The Appeals Council noted that, while it agreed with the ALJ's finding with respect to physical limitations, i.e., Plaintiff was limited to light work, the Appeals Council did not agree with the ALJ's finding with respect to Plaintiff's mental limitations (Tr. 6). The Appeals Council concluded that Plaintiff could perform the full range of light work (Tr. 6).[2] The Appeals Council also reviewed additional evidence submitted by Plaintiff after the ALJ issued his decision, including a January 2008 letter from his treating physician, Dr. Grunstra, indicating that Plaintiff had been disabled prior to the expiration of his insured status (Tr. 6). The Appeals Council noted that the issue of disability is reserved to the Commissioner and that the ALJ had considered a previous opinion from Dr. Grunstra and provided an adequate rationale for not giving that opinion any great weight (Tr. 6). The Appeals Council went on to find that Plaintiff was not able to perform his past work and concluded that Plaintiff was not disabled under Rule 202.11 of the medical-vocational guidelines ("GRID"). The Appeals Council, therefore, concluded that Plaintiff was not disabled prior to the

---

[1] In order for Plaintiff to be entitled to DIB, he must prove that he was disabled prior to the expiration of his insured status, December 31, 2005 (Tr. 92). See 42 U.S.C. § 416(i)(2); 20 C.F.R. § 404.1505(a); Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990).

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. 20 C.F.R. § 404.1567(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Social Security Ruling 83-10.

2

expiration of his insured status (Tr. 7-8). The Appeals Council decision became the final decision of the Commissioner subject to judicial review (Tr. 1-2). Pursuant to 42 U.S.C. § 405(g), Plaintiff has filed this civil action for judicial review of the Commissioner's final decision. The Court has jurisdiction over this action pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g).

<u>Standard of Review - Findings of the ALJ</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir.

1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 15, 2000 through his date last insured of December 31, 2005 (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe combination of impairments: degenerative disc disease, history of coronary artery disease, and a depressive disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)..
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work that allows for no contact with the public and occasional contact with coworkers and supervisors.
>
> 6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

4

> 7. The claimant was born on August 29, 1951 and was 54 years old, which is defined as an individual approaching advanced age, on the date last insured (20 CFR 404.1563).
>
> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).
>
> 9. The claimant has no transferable job skills.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).
>
> 11. The claimant was not under a disability as defined in the Social Security Act, at any time from May 15, 2000, the alleged onset date, through December 31, 2005, the date last insured (20 CFR 404.1520(g)).

Tr. 24-31.

New evidence was submitted to the Appeals Council and considered by them. The evidence included the January 7, 2008 opinion letter of Dr. Grunstra (Tr. 5-7, 85). After consideration of all the evidence, the Appeals Council made the following findings:

> 1. The claimant met the special earnings requirements of the Act on May 15, 2000, the date the claimant stated he became unable to work and met them through December 31, 2005.
>
> The claimant has not engaged in substantial gainful activity since May 15, 2000.
>
> 2. The claimant has the following severe impairments: degenerative disc disease and history of coronary artery disease, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 3. The claimant's combination of impairments results in the following limitations on his ability to perform work-related

activities: The claimant was able to perform light work as defined in 20 CFR 404.1567, through December 31, 2005, the date he last met the insured status requirements of the Act.

4. The claimant's subjective complaints were not fully credible for the reasons identified in the body of the Administrative Law Judge's decision.

5. The claimant was unable to perform past relevant work.

6. On December 31, 2005, the date he last met the disability insured status requirements, the claimant was 54 years old, which is defined as closely approaching advanced age and had a limited or less education. The claimant's past relevant work was semiskilled and he had no skills that were transferable to skilled or semiskilled occupations within his residual functional capacity.

7. Based on the claimant's residual functional capacity, age, education, and work experience, 20 CFR 404.1569 and Rule 202.11, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, direct a finding that the claimant was not disabled (20 CFR 404.1520(f)).

8. The claimant was not disabled as defined in the Social Security Act at any time through December 31, 2005, the date he last met the disability insured status requirements of the Act.

Tr. 7-8.

## Issues Presented

Plaintiff raises two issues: (1) whether the Commissioner's decision is supported by substantial evidence and (2) whether the case should be remanded because the Plaintiff submitted new and material evidence to the Appeals Council (Doc. 9, Plaintiff's Brief at p. 2).

I will analyze the facts and law to determine if there is substantial evidence to support the conclusion of the ALJ that plaintiff was not under a "disability," as defined in the Social Security Act, from May 15, 2000 through Plaintiff's date last insured, December 31, 2005.

6

## Relevant Facts

### Vocational Factors

Plaintiff was 54 years old at the time his insured status had expired and was considered a "person closely approaching advanced age" (Tr. 86). 20 C.F.R. § 404.1563(e). He completed an eighth grade education (Tr. 40); and he had past relevant work as a service representative and drug screener (Tr. 30, 99).

### Plaintiff's Administrative Testimony

Plaintiff testified he stopped working in May 2000 after he was fired for having a confrontation with a client over a drug screen (Tr. 41-42). He indicated he did not work since then and could not have performed his job because of the stress (Tr. 42). Plaintiff testified he did not get along with people and he had a heart condition with high blood pressure (Tr. 42). He indicated he could not work due to his heart condition and high blood pressure (Tr. 44). Plaintiff also stated he had back and knee pain. He had pain in his leg. He stated surgery was recommended but he elected not to have it. (Tr. 45-46). Plaintiff testified he read the newspaper, washed the dishes a little bit, did some yard work (mowing and trimming a one acre lot over a period of time), and vacuumed a little bit (Tr. 48-49).

### Relevant Medical Evidence

Bernard Grunstra, M.D., Plaintiff's family physician, referred Plaintiff to Christopher J. Kennedy, M.D., a cardiologist. On April 3, 2001, Dr. Kennedy saw Plaintiff and noted that Plaintiff was "doing quite well," but had some atypical discomfort in the left upper chest. Plaintiff denied palpitations, dizziness, and syncope, but he had some mild dyspnea on exertion

7

which he attributed to being out of shape. Hypertension was under fair control. On examination, Dr. Kennedy noted no abnormalities. He recommended that Plaintiff return in a year (Tr. 156).

Plaintiff subsequently complained of chest discomfort. Dr. Grunstra recommended testing. A cardiac spect scan in April 2002 showed no abnormalities. He had a normal cardiac ejection fraction of 56 (Tr. 133-34). A treadmill stress test showed Plaintiff was symptomatic with chest tightness at peak exertion, exhibited no evidence of ischemia, and had borderline hypertensive blood pressure response (Tr. 135).

On April 16, 2002, Dr. Kennedy saw Plaintiff for complaints of chest discomfort (Tr. 154). Plaintiff indicated that he experienced the pain with heavy lifting, such as working on a car and lifting a battery, but walking at a normal pace two miles an hour on a treadmill did not result in chest discomfort. He reported he did notice pain if he tried to accelerate quickly (Tr. 154). On examination, Dr. Kennedy noted no significant abnormalities. Dr. Kennedy indicated Plaintiff presented with "suspicious" chest discomfort; had a previous documented history of coronary heart disease. Dr. Kennedy was encouraged by the results of the stress test. He did, however, have chest pains. Dr. Kennedy discussed options of conservative therapy and cardiac catherization. (Tr. 155).

On March 18, 2003, Dr. Kennedy saw Plaintiff for re-evaluation of chest pain. He saw Plaintiff a year earlier and a stress test noted some chest discomfort. Since his last visit, Dr. Kennedy noted Plaintiff had "done quite well" without any recurrence of angina. He noted Plaintiff's blood pressure was under good control. Dr. Kennedy indicated Plaintiff had no abnormalities on examination. He recommended that Plaintiff return in a year (Tr. 153).

8

On April 29, 2003, Dr. Grunstra saw Plaintiff and noted no abnormalities on examination, no symptoms of chest pain or shortness of breath and noted Plaintiff was well in appearance and in no acute distress; Dr. Grunstra indicated that Plaintiff take his medication in the morning since his blood pressure increased in the afternoon (Tr. 168). On March 4, 2004, Dr. Grunstra saw Plaintiff and noted that Plaintiff's hypertension was stable, and his EKG normal. He encouraged Plaintiff to walk (Tr. 166-67).

On August 19, 2004, Dr. Kennedy saw Plaintiff, who reported "doing quite well." Plaintiff denied dizziness, syncope (temporary loss of consciousness), and symptoms consistent with angina pectoris. On examination, Dr. Kennedy reported no abnormalities. He indicated that Plaintiff remained asymptomatic and his blood pressure was under adequate control (Tr. 152).

On August 31, 2004, Dr. Grunstra saw Plaintiff who reported "feeling pretty well." Examination showed no significant clinical abnormalities. Dr. Grunstra noted that Plaintiff's hypertension was not under perfect control and encouraged Plaintiff to lose weight (Tr. 165).

On September 27, 2005, Dr. Grunstra saw Plaintiff for a comprehensive physical examination. Dr. Grunstra indicated Plaintiff had very well controlled hypertension and dyslipidemia. Plaintiff reported some right arm weakness especially after working overhead for 30 to 40 minutes. On examination, Dr. Grunstra reported tenderness of the right arm with full range of motion, normal gross motor and light touch sensation, normal strength, and normal reflexes. Dr. Grunstra noted Plaintiff was a basically healthy 54 year old gentleman with well controlled hypertension. He was "quite stable" (Tr. 164).

On June 9, 2006, Dr. Kennedy saw Plaintiff and noted he was asymptomatic. Plaintiff denied chest pain and shortness of breath and was ambulating without difficulty. On

examination, Dr. Kennedy reported no abnormalities. He noted Plaintiff had good control of his blood pressure with Dr. Grunstra (Tr. 151).

On July 5, 2006, Dr. Grunstra filled out a form in which he noted that, in his last examination, Plaintiff did not complain of chest pain or associated symptoms and there was no evidence that Plaintiff was physically limited due to his heart condition (Tr. 162).

On August 11, 2006, Frank R. Pennington, M.D., a state agency physician, reviewed the record and concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday (Tr. 172-79).

On September 28, 2006, Dr. Grunstra noted that Plaintiff had no significant abnormalities on examination (Tr. 180). He indicated that Plaintiff was "[basically a] healthy gentleman" who should undergo a colonoscopy and who had controlled hypertension and coronary disease (Tr. 180).

A SPECT perfusion scan of the heart in October 2006 showed no abnormalities (Tr. 183). And, a treadmill test was normal (Tr. 193-94).

On October 3, 2007, Dr. Grunstra saw Plaintiff for his yearly physical examination (Tr. 209-10). Plaintiff complained of right knee pain, hypertension, moderate dyspnea, chronic anginal discomfort, and right thumb discomfort when lifting or carrying more than 25 pounds (Tr. 209). On examination, Dr. Grunstra reported marked swelling of the right knee with pain on motion, moderate swelling of the index finger, mild tenderness of the back, negative straight-leg raising, and an antalgic gait (Tr. 209-10). Dr. Grunstra indicated Plaintiff's EKG was

10

unremarkable. He indicated Plaintiff was generally a healthy person with multiple medical problems (Tr. 210).

On October 12, 2007, Dr. Grunstra completed a form in which he opined Plaintiff could lift 10 pounds occasionally and 5 pounds frequently; stand for 2 hours in an 8-hour workday and 15 to 20 minutes at a time; and walk for 200 to 300 feet (Tr. 206). Dr. Grunstra noted Plaintiff had no limitations with respect to sitting (Tr. 207). He based his opinion on Plaintiff's complaints of chronic angina (Tr. 206).

On January 7, 2008, Dr. Grunstra informed Plaintiff and his attorney that Plaintiff had been experiencing chronic angina pectoris for many years and that he had been disabled secondary to this condition certainly prior to December 31, 2005 (Tr. 85).

Vocational Expert Testimony

Robert Spangler, a vocational expert, testified at the administrative hearing (Tr. 52). The vocational expert described Plaintiff's past work as a service representative/courier as between light and medium semi-skilled work and drug screen clerk as sedentary, unskilled work (Tr. 53).

Analysis

*Is the Commissioner's Decision supported by Substantial Evidence?*

The ALJ reviewed the record as a whole and concluded, with respect to Plaintiff's physical impairments, that he could perform light work (Tr. 26). The Appeals Council noted that it took no issue with the ALJ's finding with respect to Plaintiff's physical impairments (Tr. 6). Plaintiff, however, argues that the ALJ's finding that he could perform light work was not supported by substantial evidence because the ALJ did not properly consider the opinion of his

11

treating physician, Dr. Grunstra.  See Plaintiff's Br. at 5-8.  However, the ALJ did consider Dr. Grunstra's opinion but gave it no significant weight (Tr. 29).

Dr. Grunstra opined in October 12, 2007, that Plaintiff could lift 10 pounds occasionally and 5 pounds frequently; stand for 2 hours in an 8-hour workday and 15 to 20 minutes at a time; and walk for 200 to 300 feet (Tr. 206).  Dr. Grunstra noted Plaintiff had no limitations with respect to sitting (Tr. 207).  He based his opinion on Plaintiff's complaints of chronic angina (Tr. 206).  With these limitations, the vocational expert testified that Plaintiff could not perform work (Tr. 55).  This opinion was given over 21 months after Plaintiff's Date Last Insured.

Social Security Regulations explicitly provide that opinions are to be given less weight if not supported by clinical findings or if contradicted by other evidence. See § 404.1527(d)(3)-(4); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation"). Further, there is case law which supports the contention that post-date-last-insured evidence generally lacks probative value. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (tests from 1981 and 1983 were "minimally probative" of claimant's condition in 1979); *Liebisch v. Sec'y of Health & Human Svcs.*, 1994 WL 108957, *2 (6th Cir. Mar. 30, 1994) (1990 report was "necessarily less accurate" about claimant's condition from 1985-89 than it was about her status in 1990) *Weetman v. Sullivan*, 877 F.2d 20, 22 (6th Cir. 1989) (deterioration in the claimant's condition after the period of eligibility is irrelevant); *Siterlet v. Sec'y of Health & Human Svcs.*, 823 F.2d 918, 920 (6th Cir. 1987) (doctor's report dated eight months after end of eligibility period was "minimally probative").

However, there is case law in certain circumstances to support the conclusion that medical evidence after the DLI is relevant to the prior period. In *Begley v. Matthews,* 5444 F. 2d 1345, 1354 (1976) the court held: "Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." Furthermore, in *Higgs v. Bowen*, 880 F. 2d 860, 863 (198), the court held that the Secretary must consider medical evidence of a claimant's condition after his date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured. Further, in *Garner v. Heckler*, 745 F. 2d 383,391 (1984), the claimant's insured status expired on June 30, 1981. The record included a conclusory statement from a physician dated June 3, 1981 that the claimant was disabled. In addition, the record contained medical findings supporting the claimant's disability following an examination on August 28, 1981. In *Garner*, the court held it was error for the ALJ to fail to infer the medical findings from August 28, 1981 supported the conclusory opinion given three months earlier. The record as a whole required a finding that the claimant became disabled prior to the expiration of his insured status.

Even though the opinion in this case does relate to findings made by the physician while Plaintiff remained in insured status, there were other reasons given by the ALJ to support his decision to reject the disabling opinion. As the ALJ noted, Dr. Grunstra's opinion was not entitled to any significant weight because it was not adequately supported and was inconsistent with the other reliable evidence in the record (Tr. 29-30). *See* 20 C.F.R. § 404.1527(d)(2) (treating physician opinion is entitled to controlling weight when it is well supported by objective medical evidence and is consistent with the other substantial evidence of the record); *Walters v.*

13

*Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997). Dr. Grunstra based his opinion on complaints of chest pain, but evidence from Dr. Grunstra and Dr. Kennedy prior to the expiration of Plaintiff's insured status, December 31, 2005, failed to support complaints of chest pain (Tr. 29). In March 2003, Dr. Kennedy, the cardiologist, indicated that Plaintiff had "done quite well" without any recurrence of angina since April 2002 (Tr. 153); in April 2003, Dr. Grunstra noted that Plaintiff had no abnormalities on examination (Tr. 168); in August 2004, Dr. Kennedy noted that Plaintiff reported "doing quite well" and denied any symptoms consistent with angina pectoris (Tr. 152); in August 2004, Dr. Grunstra noted that Plaintiff reported "feeling pretty well" and had no significant clinical abnormalities on examination (Tr. 165); and, in September 2005, Dr. Grunstra performed a comprehensive physical examination and found Plaintiff to be "quite stable" (Tr. 164). As the ALJ noted, the progress notes through Plaintiff's insured status did not support any complaints of chest pain. Progress notes several months after Plaintiff's insured status did not show complaints of chest pain (Tr. 151). In June 2006, six months after Plaintiff's insured status expired, Dr. Kennedy saw Plaintiff and Plaintiff indicated that he was asymptomatic and denied chest pain and shortness of breath and in September 2006, Dr. Grunstra noted that Plaintiff's hypertension and coronary disease were controlled (Tr. 151, 180). As the ALJ properly noted, the progress notes prior to the expiration of Plaintiff's insured status did not support Dr. Grunstra's opinion (Tr. 29).

In addition, the ALJ noted that Dr. Grunstra's opinion was not consistent with the record as a whole, including the opinion of the state agency physician, Dr. Pennington, who reviewed the record and opined in August 2006 that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand or walk for about 6 hours in an 8 hour workday, and sit for about 6

14

hours in an 8 hour workday (Tr. 172-79).  Finally, as the ALJ noted, Dr. Grunstra issued his opinion in October 2007, almost two years after Plaintiff's insured status expired (Tr. 29).  Based on the record as a whole, I conclude the ALJ reasonably gave Dr. Grunstra's opinion little weight.

Plaintiff disagrees with the manner in which the ALJ weighed the evidence.  However, this Court must determine whether substantial evidence supports the ALJ's findings.  This substantial evidence standard presupposes the existence of a zone of choice in which the ALJ can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence standard allows considerable latitude to administrative decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts.").  Although Plaintiff suggests that the evidence should have been weighed differently, that does not undermine the reasonableness of the ALJ's decision.  *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").  Here, the ALJ found that Plaintiff could perform light work, and this finding must be affirmed under substantial evidence review.

The Appeals Council indicated that it agreed with the ALJ's finding that Plaintiff was an individual approaching advanced age as of the date of his insured status, he had a limited education, and he had no transferable skills (Tr. 7).  The Appeals Council concluded, based on Plaintiff's ability to perform the full range of light work and his vocational profile, Rule 202.11 of the Grids would direct a finding of not disabled (Tr. 7).  Substantial evidence supports this

15

Case 2:08-cv-00312-HSM-WBC   Document 14   Filed 12/03/09   Page 15 of 18   PageID #: 61

finding. Therefore, the Appeals Council's finding that Plaintiff was not disabled as of December 31, 2005, must be affirmed.

*Is Remand Required ?*

Plaintiff next argues that this case should be remanded pursuant to sentence six of section 205(g) of the Act, 42 U.S.C. § 405(g), for consideration of additional evidence submitted by Dr. Grunstra after the ALJ issued his decision in November 2007. In January 2008, two years after Plaintiff's Date Last Insured, Dr. Grunstra informed Plaintiff and his counsel that Plaintiff had suffered chronic angina pectoris for several years and had been disabled due to his heart problem since prior to December 31, 2005 (Tr. 85). However, the Appeals Council granted review and considered all the evidence, including Dr. Grunstra's January 2008 letter (Tr. 6). In this situation the Appeals Council's decision became the final decision of the Agency, not the ALJ's November 2007 decision. *See Mullen v. Bowen* 800 F. 2d 535 (6th Cir. 1986). Plaintiff's argument that the additional evidence should be considered under sentence six is not appropriate in this situation since the evidence has been considered. The Appeals Council considered the evidence and noted Dr. Grunstra's January 2008 opinion indicated that Plaintiff was "disabled;" however, as the Appeals Council properly noted, the issue of disability is an issue reserved for the Commissioner and is not entitled to any particular weight. 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The Appeals Council noted that the ALJ provided an adequate rationale for discounting Dr. Grunstra's October 2007 opinion, a view shared by the undersigned (Tr. 6). As discussed above, in his October 2007 opinion, Dr. Grunstra relied on Plaintiff's chronic angina pectoris to find him disabled, but the ALJ pointed out that the progress

16

notes prior to the expiration of Plaintiff's insured status did not support such an opinion. Similarly, Dr. Grunstra indicated in January 2008 that Plaintiff's chronic angina pectoris rendered him disabled prior to December 31, 2005, but the record evidence simply did not support such an opinion. As the Appeals Council found, Dr. Grunstra's January 2008 opinion was not entitled to any significant weight (Tr. 6). Under all of these circumstances, I conclude their decision was supported by substantial evidence.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and decision of the Commissioner. Accordingly, I **RECOMMEND**[3] a judgment enter:

    (1)    **DENYING** the plaintiff's motion for judgment on the Pleadings or in the Alternative for Remand (Doc. 8);

    (2)    **GRANTING** the defendant's motion for a summary judgment (Doc.11);

    (3)    **AFFIRMING** the decision of the Commissioner; and,

    (4)    **DISMISSING** this action.

Dated: December 3, 2009        s/William B. Mitchell Carter
                                            UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive and general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).